******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GREEN TREE SERVICING, LLC *v.* JANE E.
CLARK ET AL.
(AC 44582)

Bright, C. J., and Alvord and Palmer, Js.

*Syllabus*

Pursuant to statute (§ 8-265ee (a)), "a mortgagee who desires to foreclose
upon a mortgage . . . shall give notice to each homeowner who is a
mortgagor by registered, or certified mail, postage prepaid at the address
of the property which is secured by the mortgage. No such mortgagee
may commence a foreclosure of a mortgage prior to mailing such notice."

In 2014, the plaintiff G Co. sought to foreclose a mortgage on certain residen-
tial property owned by the defendant mortgagor. In 2015, G Co. filed its
affidavit of compliance with the state's Emergency Mortgage Assistance
Program (EMAP), pursuant to § 8-265ee (a). W Co. was thereafter substi-
tuted as the plaintiff. The court granted W Co.'s motion for summary
judgment as to liability, and subsequently rendered a judgment of strict
foreclosure. The defendant filed an appeal, which was dismissed after
he failed to file an appellate brief. The defendant thereafter filed a
postjudgment motion to dismiss on the basis that the court lacked
subject matter jurisdiction because G Co. failed to send an EMAP notice
before commencing the action. The trial court denied the motion to
dismiss. The court found that, although G Co. had failed to provide the
defendant with timely notice of EMAP before bringing the present action
in violation of § 8-265ee (a), the public policy of finality outweighed
providing the defendant with a second opportunity to avail himself of
EMAP, especially after he undertook to mediate the dispute for nearly
one year before fully litigating the matter to a judgment and an appeal.
The court further concluded that to allow the defendant to sit on his
rights, only to collaterally attack the existing judgment, would have
permitted a strategic delay of the proceedings. On the defendant's appeal
to this court, *held* that this court affirmed the trial court's judgment
denying the defendant's postjudgment motion to dismiss on the disposi-
tive alternative ground that the defendant waived his right to raise a
claim concerning G Co.'s compliance with EMAP: although G Co. had
failed to timely comply with the EMAP notice requirement and the
defendant's motion to dismiss was not an impermissible collateral attack
on the foreclosure judgment, as the trial court retained jurisdiction to
open the judgment at the time of the filing of the motion to dismiss,
this court concluded that the defendant had waived his right to raise a
claim concerning G Co.'s EMAP notice compliance, as G Co. effectively
alerted the defendant to an issue with compliance in its affidavit by
averring that it had given the notice containing the information required
by § 8-265ee to the defendant in 2015, more than one year after the

present action had been commenced, and, despite being made aware of this failure to comply with EMAP, at no point during the two years that passed between the filing of G Co.'s affidavit and the trial court's judgment of strict foreclosure did the defendant raise G Co.'s noncompliance with EMAP by way of a motion to strike, in his answer, or in opposing W Co.'s motion for summary judgment, the defendant did not file any opposition to W Co.'s motion for judgment of strict foreclosure, and, although the defendant filed an appeal, that appeal was dismissed after he failed to file an appellate brief; accordingly, although W Co. failed to satisfy a mandatory condition precedent, no motion was filed challenging the action on that basis prior to the court's rendering judgment of strict foreclosure or the defendant's first appeal from that judgment.

Argued December 6, 2023—officially released April 16, 2024

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Hartford, where the named defendant et al. were defaulted; thereafter, the plaintiff filed an amended complaint; subsequently, Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust, was substituted as the plaintiff; subsequently, the court, *Robaina, J.*, granted the substitute plaintiff's motion for summary judgment as to liability; thereafter, the court, *Dubay, J.*, granted the substitute plaintiff's motion for judgment of strict foreclosure and rendered judgment thereon, from which the defendant Charles I. Merlis appealed to this court, which dismissed the appeal; subsequently, the court, *M. Taylor, J.*, denied the motion to dismiss filed by the defendant Charles I. Merlis, and the defendant Charles I. Merlis appealed to this court. *Affirmed.*

*Charles I. Merlis*, self-represented, the appellant (defendant).

*Jeffrey M. Knickerbocker*, for the appellee (substitute plaintiff).

*Opinion*

ALVORD, J. The self-represented defendant Charles I. Merlis[1] appeals from the judgment of the trial court denying his motion to dismiss the foreclosure action following the judgment of strict foreclosure rendered in favor of the substitute plaintiff, Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust (Wilmington).[2] On appeal, the defendant claims that the court improperly denied his post-judgment motion to dismiss the action because the original plaintiff, Green Tree Servicing, LLC (Green Tree), failed to give him proper notice of the state's Emergency Mortgage Assistance Program (EMAP), as required by General Statutes § 8-265ee (a).[3] We disagree because

---

[1] The complaint also named Jane E. Clark; St. Francis Hospital and Medical Center; Webster Bank, National Association; Tortora, Da Silva and Flaherty; and National Credit Adjusters, LLC, as additional defendants. Clark was defaulted for failure to plead, Webster Bank, National Association, was defaulted for failure to disclose a defense, and the remaining additional defendants were defaulted for failure to appear. None of the additional defendants have participated in this appeal. Accordingly, we refer to Charles I. Merlis as the defendant.

[2] Green Tree Servicing, LLC (Green Tree), commenced this foreclosure action in 2014. In November, 2015, the court granted the motion to substitute Ditech Financial, LLC, as the plaintiff. In September, 2016, the court granted the motion to substitute Wilmington as the plaintiff.

[3] General Statutes § 8-265ee (a) provides in relevant part that "a mortgagee who desires to foreclose upon a mortgage which satisfies the standards contained in subdivisions (1), (9), (10) and (11) of subsection (e) of section 8-265ff, shall give notice to each homeowner who is a mortgagor by registered, or certified mail, postage prepaid at the address of the property which is secured by the mortgage. No such mortgagee may commence a foreclosure of a mortgage prior to mailing such notice. Such notice shall advise the homeowner of his delinquency or other default under the mortgage and shall state that the homeowner has sixty days from the date of such notice in which to (1) have a face-to-face meeting, telephone or other conference acceptable to the authority with the mortgagee or a face-to-face meeting with a consumer credit counseling agency to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise, and (2) contact the authority, at an address and phone number contained in the notice, to obtain information and apply for emergency mortgage assistance payments if the homeowner and mortgagee are unable to resolve the delinquency or default."

we conclude that the defendant waived his claim. We therefore affirm the judgment of the court.

The following facts and procedural history are relevant to our resolution of this appeal. In March, 2014, Green Tree commenced this action against the defendant and Jane E. Clark to foreclose a mortgage on residential property in West Hartford. The parties participated in the foreclosure mediation program; see General Statutes § 49-31m; until mediation was terminated due to the defendant's failure to attend a scheduled mediation and to provide required financial information. Upon termination of mediation in February, 2015, the parties reengaged in discovery and motion practice.

On August 31, 2015, Green Tree filed an affidavit of compliance with EMAP. In the affidavit, a paralegal employed by Green Tree's counsel averred that, "[b]ased on . . . [the] business records [of Green Tree's counsel] and its regular business practices, [Green Tree] has complied with the [EMAP] by [Green Tree's counsel] giving on March 20, 2015 to all mortgagors a notice containing the information required by said statute."[4] A few days later, on September 4, 2015, the defendant, who was then represented by counsel,[5] filed a motion to strike the complaint on the basis that Green Tree had misstated his name as "Charles I. Clark," and requested that Green Tree file a new complaint correcting his name. In September, 2015, Green Tree responded to the motion to strike by filing the operative amended complaint. In November, 2015, the court granted Green Tree's motion to substitute Ditech Financial, LLC, as

Although § 8-265ee has been amended since the events underlying this appeal; see Public Acts 2021, No. 21-44, § 8; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[4] The affidavit did not have any attachments.

[5] See footnote 11 of this opinion.

the plaintiff, and, in September, 2016, the court granted the motion to substitute Wilmington as the plaintiff.

On January 11, 2017, the defendant filed an answer and special defenses to the amended complaint. His special defenses alleged that Wilmington lacked standing, that Wilmington did not possess the original note, and payment. In June, 2017, Wilmington filed a motion for summary judgment as to liability. The defendant filed an objection to the motion for summary judgment and affidavit in support of his objection. Therein, he presented argument in support of his special defense of payment and also argued that Green Tree had failed to provide him with a valid notice of acceleration. The court, *Robaina, J.*, granted Wilmington's motion for summary judgment as to liability on September 11, 2017. Wilmington thereafter filed a motion for judgment of strict foreclosure, to which the defendant did not file a response, and the court, *Dubay, J.*, granted the motion on November 13, 2017. The court set law days to commence on January 29, 2018.

On December 1, 2017, the defendant filed an appeal with this court.[6] Following four extensions of time, the defendant failed to file his appellate brief, and the appeal was dismissed on August 23, 2019. Following the dismissal of the appeal, on December 2, 2019, the court granted Wilmington's motion to reenter the judgment of foreclosure and reset the law days to commence on March 23, 2020. Over the course of the litigation, the court reset the law days a total of eight times.

On October 6, 2020, the defendant filed, on a Judicial Branch form designated for motions to open a judgment, a motion in which he argued that the court lacked

---

[6] In October, 2018, the defendant filed a motion for articulation, in which he requested articulation as to his special defense of payment and his contention that Wilmington did not possess the original note. The motion for articulation was denied.

subject matter jurisdiction because Green Tree had failed to comply with the EMAP notice requirements, in light of this court's decision in *MTGLQ Investors, L.P.* v. *Hammons*, 196 Conn. App. 636, 638, 230 A.3d 882 (2020) (overruled by *KeyBank, N.A.* v. *Yazar*, 347 Conn. 381, 297 A.3d 968 (2023)), cert. denied, 335 Conn. 950, 238 A.3d 21 (2020). The defendant requested that the court extend the law days for sixty days to permit the parties to brief the subject matter jurisdiction issue. The court granted the motion to set a new law day and set law days to commence on December 8, 2020. The law days were subsequently extended two additional times, to March 30, 2021.

On December 7, 2020, the defendant filed a motion to dismiss the foreclosure action on the basis that the court lacked subject matter jurisdiction over the action because Green Tree had failed to send an EMAP notice before commencing the action. The defendant also filed a memorandum of law in support of his motion. On December 18, 2020, Wilmington filed a memorandum of law in opposition to the defendant's motion to dismiss, arguing that it had complied with the EMAP requirement by sending a letter on March 20, 2015,[7] and that the defendant's argument was barred by his failure to raise the issue in his prior appeal.

The defendant filed a reply on February 19, 2021, arguing that the mailing of the notice more than one year after commencing the foreclosure action did not constitute compliance with EMAP and that his claim was not waivable because it implicated the court's subject matter jurisdiction. On February 22, 2021, Wilmington filed a surreply, in which it argued that the defendant's challenge constituted an impermissible collateral

---

[7] Wilmington attached to its memorandum of law in opposition to the defendant's motion to dismiss a copy of the March 20, 2015 letter with a certified mail tracking number.

attack on the foreclosure judgment, citing *Bank of New York Mellon* v. *Tope*, 202 Conn. App. 540, 541, 246 A.3d 4 (2021), rev'd, 345 Conn. 662, 286 A.3d 891 (2022). Wilmington additionally argued that § 8-265ee does not require an EMAP notice to be sent to a borrower when a second borrower, in this case Clark, no longer lives at the property. A hearing was held on the motion on February 22, 2021.[8]

On March 4, 2021, the court, *M. Taylor, J.*, issued a memorandum of decision in which it denied the defendant's motion to dismiss. The court first found that Green Tree mailed an EMAP notice to both the defendant and Clark on March 20, 2015. No return receipt was provided, and the defendant claimed that he did not receive the notice and, thus, he did not avail himself of the program. On the basis of the untimely mailing, the court found that Green Tree "failed to provide the defendant with timely notice of the EMAP program before bringing this action to foreclose the mortgage on his home, in contravention of the requirements of § 8-265ee (a)."

The court framed its inquiry as "whether the statutory EMAP provision, requiring notice of mortgage assistance programs, ought to nullify a judgment of strict foreclosure after years of litigation, during which the defendant exercised his right to mediation as well as an appeal after judgment, albeit dismissed on procedural grounds." The court explained that "the procedural context of a challenge to subject matter jurisdiction is an important consideration, leading courts to disfavor collateral attacks on judgments." The court noted that the "underlying right to notice of EMAP has existed throughout these proceedings and was, therefore, an existing and knowable legal right."

---

[8] The transcript of the hearing on the motion to dismiss was not filed in this appeal.

The court considered the important public policy underlying EMAP, which it described as especially important in the present case, in which the defendant had challenged the underlying default of his monthly mortgage payment. The court explained: "Absent the opportunity to apply for mortgage relief and resolve his dispute with the plaintiff in a pre-litigation forum such as EMAP, the dispute has continued into this long-standing litigation. In mitigation of his rights under EMAP, though distinguishable, the defendant undertook the opportunity to mediate his dispute with the plaintiff for nearly a year before litigating the dispute to judgment and an appeal. Therefore, whatever procedural and substantive rights may have flowed upon proper notice of EMAP, the defendant was afforded the opportunity to resolve the matter through court-sponsored mediation, albeit subsequent to engaging the machinery of litigation. Although court-supervised mediation did not resolve the foreclosure, EMAP similarly does not guarantee the resolution of the dispute between the parties."[9]

The court determined that, "[a]t this stage of the proceedings . . . based upon the facts and procedural posture of this case, the public policy of finality outweighs providing the defendant with a second opportunity, to begin again and avail himself of EMAP, especially after taking the opportunity to mediate the dispute for nearly one year before fully litigating the matter to a judgment and an appeal, albeit dismissed on procedural grounds. To allow a defendant to sit on his or her knowable rights, only to arise and collaterally attack an existing judgment after seven years of litigation and an appeal, would permit a strategic delay of proceedings

---

[9] The court stated in a footnote that it had "no basis to conclude that the defendant intentionally delayed his motion to dismiss for strategic purposes," but it expressed a concern that, "[t]o hold otherwise, here, might allow for such abuse in other cases."

that would have otherwise come to a conclusion on the underlying merits of the case." This appeal followed.

After this appeal was briefed and argued, this court ordered consideration of the appeal deferred until the final disposition by our Supreme Court of two pending cases, *Bank of New York Mellon* v. *Tope*, 345 Conn. 662, 663, 286 A.3d 891 (2022), and *KeyBank, N.A.* v. *Yazar*, 347 Conn. 381, 384, 297 A.3d 968 (2023), which were released on December 20, 2022, and August 1, 2023, respectively. This court then ordered the parties to file supplemental briefs addressing the effect of those decisions on the present appeal and heard additional oral argument on December 6, 2023.

On appeal, the defendant claims that the court improperly denied his postjudgment motion to dismiss the action because Green Tree failed to comply with the EMAP notice requirement.

We first set forth our standard of review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Melahn*, 222 Conn. App. 828, 838–39, 307 A.3d 911 (2023), cert. denied, 348 Conn. 951, 308 A.3d 1038 (2024). "[If] the trial court reaches a correct decision but on [improper] grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. . . . [W]e . . . may affirm the court's judgment on a dispositive [alternative] ground for which there is support in the trial court record." (Internal quotation marks omitted.) Id., 840–41.

We next set forth the EMAP notice requirement. "[Section] 8-265ee prohibits the initiation of a valid suit without providing the EMAP notice by affirmatively providing that [n]o such mortgagee may commence a foreclosure of a mortgage prior to mailing such notice. . . . [General Statutes §] 8-265dd, which establishes EMAP, also prevents the court from rendering any judgment of foreclosure until the EMAP notice has been sent, the sixty day response time has expired, and, if relevant, a determination has been made on the application for emergency mortgage assistance payments. . . . Specifically, the statute provides in relevant part: [N]o judgment of strict foreclosure nor any judgment ordering a foreclosure sale shall be entered in any action instituted by the mortgagee . . . for the foreclosure of an eligible mortgage unless . . . notice to the homeowner who is a mortgagor has been given by the mortgagee in accordance with section 8-265ee and the time for response has expired . . . .

"Moreover, the EMAP does not require a return receipt for the provision of the required notice to a mortgagor, and the lack of a return receipt in the record does not affect [a mortgagee's] compliance with the [EMAP]. . . . Consequently, [it is sufficient] to establish that a letter was actually placed in the mail. . . . Whether a letter actually was placed in the mail may be proved either by direct or circumstantial evidence. It may be proved by the testimony of the person who deposited it or by proof of facts from which it may be reasonably inferred that it was duly deposited." (Citation omitted; internal quotation marks omitted.) Id., 844–45.

Our Supreme Court has held that compliance with the EMAP notice requirement is a condition precedent to the commencement of a foreclosure action. Specifically, it stated: "To have a cause of action on which relief can be granted, the notice requirement must be

fulfilled. The legislature has made it clear that the burden rests with the mortgagee to demonstrate compliance with the EMAP notice requirement. Specifically, subsection (b) of § 8-265ee requires the mortgagee to file an affidavit with the court stating that the notice provisions of subsection (a) have been complied with and that the relevant time period has expired. Only after the mortgagee files such an affidavit may the foreclosure suit continue. See General Statutes § 8-265ee (b). If a mortgagee fails to comply with § 8-265ee (a), it has failed to satisfy a mandatory condition precedent and, therefore, has failed to allege a claim on which relief can be granted." *KeyBank*, *N.A.* v. *Yazar*, supra, 347 Conn. 393–94.

The court agreed with the plaintiff's contention that the EMAP notice requirement does not implicate a court's subject matter jurisdiction, overruling *MTGLQ Investors*, *L.P.* v. *Hammons*, supra, 196 Conn. App. 636. *KeyBank*, *N.A.* v. *Yazar*, supra, 347 Conn. 396–97. In rejecting the argument that a determination that the EMAP notice requirement is not jurisdictional would frustrate the legislative intent of the EMAP amendments, the court stated: "Our holding that the EMAP notice is a mandatory condition precedent does nothing to dilute or impair the legislative intent or public policy underlying the 2008 amendments. The mortgagee is still mandated to provide the homeowner with the EMAP notice. Therefore, the public policy underlying the notice requirement—informing homeowners of their rights and the resources available to them to assist in avoiding foreclosure—is fulfilled. A foreclosure action may not proceed unless the EMAP notice requirement is carried out. If the plaintiff does not satisfy that condition, it has failed to allege a claim on which relief can be granted." Id., 398.

In a footnote, the court in *Yazar* identified the procedural avenues available to a mortgagor seeking to raise

a challenge to the mortgagee's compliance with the EMAP notice requirement, explaining that "[t]he failure to state a claim on which relief can be granted is typically addressed through a motion to strike, and, if the motion is granted, the plaintiff is allowed an opportunity to replead the stricken claim. See Practice Book §§ 10-39 (a) (1) and 10-44. The failure to send an EMAP notice, however, cannot be cured, as the plaintiff must send the EMAP notice prior to initiating suit to have an actionable claim to relief. In these instances, we have stated that the use of a motion for summary judgment to challenge the legal sufficiency of a complaint is appropriate when the complaint fails to set forth a cause of action and the defendant can establish that the defect could not be cured by repleading. . . . As such, either a motion to strike or a motion for summary judgment is an available procedural avenue to challenge the failure to send an EMAP notice." (Citation omitted; internal quotation marks omitted.) Id., 394 n.9.

Most recently, in *Wells Fargo Bank, N.A.* v. *Melahn,* supra, 222 Conn. App. 830–31, 838, this court affirmed a judgment of strict foreclosure, finding no error in the trial court's denial of the defendant's motion to dismiss the action for lack of subject matter jurisdiction on the basis of allegations that the plaintiff had filed false affidavits regarding its compliance with the EMAP notice requirement. The court first considered the trial court's determination that the motion constituted an impermissible collateral attack. Id., 838. This court rejected that basis for the denial of the motion to dismiss, stating that, because there was no final judgment at the time the court decided the motion to dismiss, the motion was not an impermissible collateral attack. Id., 840. However, this court affirmed the judgment on the alternative ground that, because "the question of a plaintiff's compliance with the EMAP notice requirement no longer implicates the court's subject matter

jurisdiction over the foreclosure action . . . the court would have been entitled to deny the motion to dismiss because it failed to raise properly a claim that the court lacked subject matter jurisdiction over the action." (Citation omitted.) Id., 841. The court also stated that "the [trial] court addressed the merits of the defendant's EMAP claim when it adjudicated both the defendant's motion to dismiss and the plaintiff's motion for summary judgment. . . . [T]he court properly determined that the defendant failed to raise a genuine issue of material fact regarding the plaintiff's compliance with the EMAP notification requirement." Id.

In the present case, at the time the trial court denied the defendant's motion to dismiss, the court, to the extent that it concluded that the defendant's motion to dismiss constituted an impermissible collateral attack on the judgment, relied on this court's decision in *Bank of New York Mellon* v. *Tope*, supra, 202 Conn. App. 540. In *Bank of New York Mellon* v. *Tope*, supra, 345 Conn. 665, 671, however, our Supreme Court reversed this court's decision and concluded that the defendant's motion to open the judgment of foreclosure by sale did not constitute a collateral attack on an earlier judgment. It noted that "an attack on a judgment within the same action or proceeding in which it was obtained can be a collateral attack if the judgment has become final and the court that rendered the judgment no longer has jurisdiction to open it." Id., 672. The court explained, however, that "[i]n a foreclosure by sale, the court retains jurisdiction to modify the judgment until the foreclosure sale is approved." Id., 673. Because the sale had not been approved, the judgment was not final and, "[a]s a result, when the court rendered the July, 2017 judgment, a new, four month limitation period was triggered, under which the modified judgment could be opened. Therefore, at the time the defendant filed his motion to open the judgment on September 28, 2017,

the trial court had jurisdiction to open the judgment under [General Statutes] § 52-212a." Id., 676. Accordingly, the court determined that the motion to open was not an impermissible collateral attack. Id.

In the present case, the court retained jurisdiction to open the foreclosure judgment at the time of the filing of the motion to dismiss. See *Real Estate Mortgage Network, Inc.* v. *Squillante*, 184 Conn. App. 356, 360, 194 A.3d 1262 ("[w]hether the trial court has jurisdiction to open a judgment of strict foreclosure is generally dependent on whether title has vested in the encumbrancer"), cert. denied, 330 Conn. 950, 197 A.3d 390 (2018); see also General Statutes § 49-15 (providing that no judgment of strict foreclosure "shall be opened after the title has become absolute in any encumbrancer"). Accordingly, the motion did not constitute an impermissible collateral attack on the judgment. See, e.g., *Wells Fargo Bank, N.A.* v. *Melahn*, supra, 222 Conn. App. 840 (motion to dismiss was not impermissible collateral attack due to absence of final judgment).

As noted previously in this opinion, however, this court may affirm the court's judgment on a dispositive alternative ground for which there is support in the trial court record. Accordingly, we consider Wilmington's contention that the defendant has waived his right to raise a claim concerning EMAP compliance. We conclude that he has.[10]

It is axiomatic that "[t]he court's function is generally limited to adjudicating the issues raised by the parties on the proof they have presented and applying appropriate procedural sanctions on motion of a party. . . . The parties, may, under our rules of practice, challenge

[10] Because we conclude that the defendant has waived his claim regarding EMAP compliance, we need not reach Wilmington's proposed alternative ground for affirmance that no EMAP notice was required because Clark no longer lived at the property.

the legal sufficiency of a claim at two points prior to the commencement of trial. First, a party may challenge the legal sufficiency of an adverse party's claim by filing a motion to strike. Practice Book § 10-39. Second, a party may move for summary judgment and request the trial court to render judgment in its favor if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Practice Book §§ 17-44 and 17-49. In both instances, the rules of practice require a party to file a written motion to trigger the trial court's determination of a dispositive question of law. The rules of practice do not provide the trial court with authority to determine dispositive questions of law in the absence of such a motion. . . .

"A court may not grant summary judgment sua sponte. . . . The issue first must be raised by the motion of a party and supported by affidavits, documents or other forms of proof. . . . When a rule of practice requires a written motion, a memorandum of law and supporting documentation, it is because the issue to be decided is of considerable importance. In the case of summary judgment, which results in a swift, concise end to often complex litigation without benefit of a full trial, the parties and the court need to be as well informed as possible on the applicable law and facts." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Emeritus Senior Living* v. *Lepore*, 183 Conn. App. 23, 25–26 n.3, 191 A.3d 212 (2018).

Our Supreme Court in *Yazar* explained that motions to strike or for summary judgment are appropriate procedural avenues to challenge a plaintiff's compliance with EMAP because "a mortgagee [who] fails to comply with § 8-265ee (a) . . . has failed to satisfy a mandatory condition precedent and, therefore, has failed to allege a claim on which relief can be granted." *KeyBank,*

*N.A.* v. *Yazar*, supra, 347 Conn. 393–94 and n.9. In setting forth the procedural avenues available to a defendant seeking to raise EMAP noncompliance, our Supreme Court did not identify any postjudgment motions.

In the present case, Green Tree effectively alerted the defendant to an issue with its EMAP compliance in its affidavit, which was filed on August 31, 2015. "Subsection (b) of § 8-265ee requires the mortgagee to file an affidavit with the court stating that the notice provisions of subsection (a) have been complied with and that the relevant time period has expired. Only after the mortgagee files such an affidavit may the foreclosure suit continue." *KeyBank*, *N.A.* v. *Yazar*, supra, 347 Conn. 394. In the present case, it was averred that Green Tree had given, *on March 20, 2015*, a notice to the mortgagors containing the information required by § 8-265ee (a). Although the affidavit averred compliance with the provisions of the statute, the affidavit clearly stated the date on which it claimed it had given notice, which date, significantly, was after the filing of the present action.

Despite being made aware of Green Tree's failure to timely comply with EMAP, more than two years passed between the filing of the affidavit and the court's rendering of a judgment of strict foreclosure. At no point during those two years did the defendant raise Green Tree's noncompliance with EMAP. Although the defendant, who was then represented by counsel,[11] filed a

---

[11] The defendant was represented by Attorney John L. Giulietti from September 4, 2015, until after the rendering of judgment on November 13, 2017. On December 6, 2017, Giulietti filed a motion to withdraw his appearance, which the court granted on December 18, 2017. In addition to filing the motion to strike, answer, and opposition to Wilmington's motion for summary judgment, Giulietti also filed on the defendant's behalf a motion to dismiss for lack of subject matter jurisdiction predicated on a claim that Wilmington lacked standing. That motion was later withdrawn.

motion to strike the complaint shortly after the EMAP affidavit was filed, the only ground alleged in the motion to strike was that the complaint had misstated the defendant's last name. Following the filing of an amended complaint to correct the misstatement, the defendant did not thereafter attempt to challenge Green Tree's compliance with EMAP by filing a second motion to strike, assuming it would have been permissible to do so.[12] Moreover, once the defendant filed his answer to the amended complaint, he waived his right to challenge the legal sufficiency of the complaint in a motion to strike. See, e.g., *Rogan* v. *Rungee*, 165 Conn. App. 209, 216 n.3, 140 A.3d 979 (2016) (party waived right to raise issue properly raised in motion to strike by filing answer); see also Practice Book §§ 10-6 and 10-7. In his answer, the defendant did not raise noncompliance with EMAP as a defense. Additionally, the defendant did not at any time file a motion for summary judgment. In responding to Wilmington's motion for summary judgment, filed in June, 2017, the defendant again failed to raise EMAP noncompliance. Finally, the defendant did not file any opposition to Wilmington's motion for judgment of strict foreclosure. He subsequently filed an appeal from the judgment of foreclosure, but the appeal

[12] Although our appellate courts have yet to address the issue, decisions of our Superior Court have held that "the rules of practice preclude a party from filing successive motions to strike when the grounds raised in a later motion could have been raised in the initial motion . . . . [A] second motion to strike may be appropriate in limited circumstances. For example, when a plaintiff, pursuant to Practice Book § 10-44, files a subsequent pleading alleging new facts . . . . Additional motions to strike, however, are not allowed when the grounds asserted therein could have been raised in an earlier motion. . . . [Because] [t]he Practice Book provides for pleading multiple grounds in a single motion to strike and, further, provides that pleadings are to advance after the adjudication of each enumerated pleading, a defendant may not impede the progress of the suit by dividing his grounds and pleading them in consecutive motions to strike." (Citation omitted; internal quotation marks omitted.) *Red Law Firm, LLC* v. *Webster Bank*, Superior Court, judicial district of New Haven, Docket No. CV-12-6029913-S (February 7, 2014).

was dismissed in August, 2019, after the defendant had failed to file his appellate brief.

Thus, although Wilmington failed to satisfy a mandatory condition precedent, no motion was filed challenging the action on that basis prior to the court's rendering of a judgment of foreclosure or the defendant's first appeal from that judgment. Moreover, because "the question of a plaintiff's compliance with the EMAP notice requirement no longer implicates the court's subject matter jurisdiction over the foreclosure action . . . the court would have been entitled to deny the motion to dismiss because it failed to raise properly a claim that the court lacked subject matter jurisdiction over the action." *Wells Fargo Bank*, *N.A.* v. *Melahn*, supra, 222 Conn. App. 841; see also, e.g., *Bank of New York Mellon* v. *Croce*, Superior Court, judicial district of Fairfield, Docket No. CV-18-6072015-S (September 11, 2023) (denying motion to dismiss that claimed plaintiff failed to comply with EMAP on basis that failure to comply with EMAP is not subject matter defect and defendant had waived her right to file motion to dismiss on other grounds by filing her answer).

Accordingly, we conclude, under the specific procedural facts and circumstances of the present case, that the defendant waived his right to challenge Green Tree's compliance with EMAP and that the court's denial of the defendant's postjudgment motion to dismiss does not constitute reversible error.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.